IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ERICA Y., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 25-cv-1009 |
| ) | |
| FRANK BISIGNANO, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of Defendant Commissioner of Social Security's ("Commissioner") decision denying Plaintiff Erica Y.'s ("Erica") application for Supplemental Security Income and Disability Insurance Benefits. Before the Court is Erica's Brief (D. 9), Commissioner's Amended Brief (D. 14), Erica's Reply (D. 15), Magistrate Judge Ronald Hanna's Report and Recommendation ("R&R") recommending the Commissioner's decision be affirmed (D. 16), Erica's Objections to the R&R (D. 17), and Commissioner's Response to Erica's Objections, (D. 18).

**I.   BACKGROUND[1]**

In April 2022, Erica applied for supplemental security income and disability insurance benefits, alleging that her mental health impairments have prevented her from working since November 30, 2021 ("alleged onset date"). R. 15. After an evidentiary hearing, an administrative law judge ("ALJ") denied Erica's application, finding that her ailments were limiting, but not disabling. R. 29. The ALJ explained his reasoning in an 11-page decision using the established

---

[1] Judge Hanna's R&R provides a summary of the background of this case and the ALJ's decision. (*See* D. 16, pp. 5-7). The administrative record can be found at (D. 7). Citations to the record take the form: R.___.

five-step sequential analysis for determining whether an individual is disabled. *See* R. 15–25; *see also* 20 C.F.R. §§ 404.1520(a)(4) and 416.902(a).[2]

The ALJ determined that Erica had not engaged in substantial gainful activity from the alleged onset date (November 30, 2021) through the date of the decision (May 20, 2024), (step 1); that she suffered during that period from the severe impairments agoraphobia, generalized anxiety disorder, and a stress disorder, (step 2); and that her impairments, considered singly and in combination, did not meet the criteria for any listed impairments under 20 CFR Part 404, Subpart P, Appendix 1, (step 3). *See* R. 15–18. Between steps 3 and 4, the ALJ assessed Erica's residual functional capacity ("RFC") and concluded that she was able to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to understanding simple and routine instructions, making simple work-related decisions, and to the performance of simple and routine tasks on a sustained basis with little or no change in work settings or duties. The claimant should have no contact with the general public. The claimant can sustain occasional interaction with coworkers and supervisors, but cannot perform duties that would require working in tandem with other employees. The claimant would be off task 10% of the time.

R. 19. Next, the ALJ concluded that given Erica's RFC and the vocational expert's ("VE") testimony, Erica was unable to perform her past jobs as a customer service representative and sales representative (step 4), but she could perform jobs that existed in significant numbers in the national economy (step 5). As a result, the ALJ found Erica was not disabled. R. 29. The Appeals Council denied Erica's request for review; as such, the ALJ's May 20, 2024, decision is the final

---

[2] As Judge Hanna noted, an ALJ makes five inquiries, in the following order, to determining whether a claimant is eligible to receive social security benefits: (1) Is the claimant currently engaged in substantial gainful activity? (2) does the claimant have a severe mental or physical impairment? (3) does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings? RFC Assessment. What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations? Step Four. Based on the claimant's RFC, can they perform their past work? (5) Based on the claimant's RFC, can they perform other work? *See* D. 16 (citing 20 C.F.R. § 416.920(a)(4)(i)–(v)).

decision of Commissioner. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *see also* 20 C.F.R. § 416.1481.

Erica then filed this suit appealing the Commissioner's final decision and challenging three aspects of the ALJ's RFC assessment. Specifically, Erica argues that the ALJ reversibly erred in failing to properly: (1) support his finding that she would be off-task ten percent of the workday; (2) evaluate her mental RFC; and (3) evaluate her subjective allegations. (D. 9). Magistrate Judge Hanna issued an R&R affirming the Commissioner's decision, (D. 16), and Erica objects to the R&R as to each issue raised, (D. 17).

## II. STANDARD OF REVIEW

Because Plaintiff has objected to the R&R, this Court must review those portions of the R&R *de novo* and determine whether the Commissioner's decision as to those issues are supported by substantial evidence or was the result of an error of law. Fed. R. Civ. P. 72(b). Ultimately, it is the district judge's decision to "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

The court's role in a disability benefit appeal is as follows: "we sit as a court of review applying a very deferential standard to our assessment of ALJ denials of benefits." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). A reviewing court "must affirm so long as the ALJ's decision finds support in 'substantial evidence.'" *Id.*; *see also Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). The Supreme Court and Seventh Circuit have both "emphasized just how deferential it is as a legal matter: whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high when it comes to administrative decisions." *Thorlton*, 127 F.4th at 1081 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203

L.Ed.2d 504 (2019)). As a result, an ALJ's decision will not be reversed unless the record "compels a contrary result." *Id*. (quoting *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)).

To satisfy this legal standard, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). The ALJ does not have "to provide a complete and written evaluation of every piece of testimony and evidence," *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015), but "may not ignore evidence that undercuts her conclusion." *Spicher*, 898 F.3d at 757 (citing *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014)). When reviewing an ALJ's decision for substantial evidence, the reviewing court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)); *see also Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

### III.   DISCUSSION

**A. The ALJ's off-task finding:**

In her Brief, Erica argues that the ALJ erred because he failed to explain the basis for his conclusion that Plaintiff would be off task no more than ten percent of the workday. In support, Erica argues "[t]he ALJ's only explanation for his finding was that an off task allowance was consistent with 'treatment note findings of agoraphobia with indications…her panic attacks had been brought on by difficult timelines and production goals in the past.'" (D. 9, p. 4 (quoting R. 23)). This, however, is not true and does not accurately reflect ALJ's decision.

The above quoted sentence from Erica's Brief, however, is selectively quoting the ALJ's review of the Commissioner's February 2020 decision. In the ALJ's discussion, he highlights the weaknesses of those prior findings, noting the Commissioner :

> did not limit interactions with the general public or give allowances for off task time, which would be inconsistent *with treatment note findings of agoraphobia with indications* she had limited contact with the public and *indications her panic attacks had been brought on by difficult timelines and production goals in the past* (Exhibits B2F/9, 12, 18).

R. 23 (emphasis added to portion quoted in Erica's Brief).

Contrary to Erica's contention, the ALJ then explained that off-task time was warranted based on Erica's treatment note findings and provided the following explanation:

> the claimant was limited to understanding simple and routine instructions, making simple work-related decisions, and performing simple and routine tasks on a sustained basis with little or no change in work settings or duties *with her being off task 10% of the time, based on evidence of limited attention at times and complaints of panic attacks leading to job loss, due to impossible timelines and production goals, but with her generally noted with good attention and intact thought processes and doing well in her online MBA program.*

R. 23 (emphasis added to ALJ's explanation of off-task allowance).

When the decision is read as a whole, substantial evidence supported the ALJ's conclusion. As the ALJ explained, he reviewed Erica's medical records including depression screenings prior to and during the relevant time period. While those records showed limited attention at times, generally the provider found that Erica had good attention and intact thought process. Specifically, the January 2023 medical records decreased Erica's attention to "only fair" and the April 2023 records noted that Erica reported feeling tired and had concentration issues. R. 21–22. Despite this, Erica's provider reported that her attention and intact thought process were good in April 2023. R. 22. No significant changes were reported in June 2023, but Erica's provider noted that she would

5

earn her MBA at an accelerated pace. *Id.* Erica's final appointments also showed good attention and intact thought processes.

Erica's objection agrees that although the ALJ discussed the evidence relating to the ten percent off task finding, she claims he failed to explain how he arrived at this percentage to withstand judicial review. (D. 17, p. 2). Specifically, Erica argues that the ALJ's decision does not weigh the evidence and lacks the required analysis and did not build a "logical bridge" to his conclusion. *Id.* at p. 3.

First, the Seventh Circuit has repeatedly emphasized that a claimant bears the burden of proving their disability. *Thorlton*, 127 F.4th at 1080–81 (citing *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity."); *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (a claimant has the burden of showing why they are disabled); 20 C.F.R. § 404.1512 (placing the "[r]esponsibility for evidence" on the claimant)). Here, Erica has not pointed to any medical evidence showing that her off-task percentage should be higher than ten percent given the RFC's other limitations.

Second, the ALJ's conclusion is supported by substantial evidence that Erica had only limited issues with concentration and attention. As the ALJ explained, the medical records showed limited attention at times with complaints of panic attacks leading to job loss, but overall she had good attention, intact thought processes, and was doing well in her MBA program. The medical records also showed that Erica appeared to be improving in 2023, and the ALJ considered Erica's testimony regarding her symptoms in early 2024 but found them to be inconsistent with the record and articulated his reasons for that finding. *See.* R. 23. Specifically, the ALJ stated:

> In evaluating the claimant's allegations and symptoms under SSR 16-3p, the undersigned finds the claimant's allegations to be generally inconsistent with the

6

>record. The claimant testified that she had not left her house since a panic attack at a Walmart in January 2024, but provided no evidence of any panic attack or that she was even getting treatment during this time. In fact, even within her treatment notes she was noted as taking only limited amounts of medication at times or not taking any medication or keeping appointments at other times (Exhibits B2F/8-9; B3F/4-5 13-14; B14F/2). Finally, the claimant reported her medications caused frequent bathroom breaks and as making her tired, but treatment notes gave no indications of this to her provider, beyond noting insomnia or abnormal sleeping patterns and feeling tired in her depression screening, but with her even reporting improvement with that by April 2023 (Exhibits B2F/8-9, 17-18, 21; B3F/2, 5, 8, 11).

*Id.* This by definition, was the ALJ weighing the evidence, contrary to Erica's argument that the ALJ only discussed the evidence. The ALJ also explained his reasoning for the persuasiveness of prior opinions under 20 C.F.R. §§ 404.1520s and 416.920.

Finally, Erica's objects to the R&R finding the following cases to be distinguishable from this one: *Lanigan v. Berryhill*, 865 F.3d 558 (7th Cir. 2017), *Crump v. Saul*, 932 F.3d 567 (7th Cir. 2019), *Whyte v. Saul*, No. 18-cv-1274, 2019 WL 5541412 (E.D. Wis. Oct. 25, 2019), and *Timoth H. v. Kijakazi*, No. 20-cv-04359, 2023 WL 2867947 (N.D. Ill. Apr. 10, 2023). Erica, however, does not explain why her case is not distinguishable. After careful review, this Court agrees with the analysis of those cases in the R&R. (*See* D. 16). Unlike those cases, the ALJ's conclusion here was supported by substantial evidence and he built a logical bridge between the evidence and his conclusion that Erica would be off-task ten percent of the time. The ALJ independently assessed Erica's ability to concentrate and did not improperly combine his analysis of the type of work Erica could perform with his analysis of the duration she could perform it. We also see no indication that the ALJ disregarded evidence or presented a "skewed version of the evidence." *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

Ultimately, this Court agrees with the Commissioner and Judge Hanna that the ALJ supported his limitation on Plaintiff's ability to stay on task with substantial evidence and provided a sufficient explanation linking that substantial evidence with his conclusion.

**B. ALJ's Evaluation of Plaintiff's Mental RFC:**

Next, Erica objects to the R&R's finding that the ALJ properly evaluated and explained his reasonings for Plaintiff's capacity to interact with others and perform simple and routine tasks. In that regard, the RFC states: "[t]he claimant should have no contact with the general public. The claimant can sustain occasional interaction with coworkers and supervisors, but cannot perform duties that would require working in tandem with other employees." R. 19. Specifically, Erica claims that ALJ did not link these limitations to any specific evidence.

Judge Hanna found this argument lacked merit explaining how the ALJ constructed a logical bridge between these restrictions that was supported by substantial evidence, stating:

> these restrictions reflected the evidence in the record that Erica's agoraphobia, depression, and anxiety limit her ability to interact with others. (*See, e.g.*, R. at 20 (discussing Erica's testimony that she experiences anxiety from work, suffered a panic attack in a public store, and becomes anxious meeting people virtually); R. at 22 (citing state-agency opinions that Erica would do best in "socially undemanding" environments with "reduced interpersonal contract (*sic*) away from the public"); R. at 22 (nothing that, at a doctor's visit, the physician reported Erica as being "cooperative and pleasant with an appropriate affect").) Ultimately, the ALJ concluded that Erica "could have occasional interaction with coworkers and supervisors . . . based on evidence of her appearing anxious and subdued with a dysthymic mood, but as otherwise appearing pleasant and cooperative." (R. at 23.)

(D. 16, pp. 13–14). Judge Hanna also explained that the ALJ's decision regarding the type of work Erica could perform largely relied on the state consultant's opinion which was generally consistent with Erica's treatment notes.

In her objection, Erica argues that the R&R fails to explain how the ALJ arrived at the RFC restrictions from the testimony and treatment notes. Again, Erica makes a similar argument to the

8

one above that the ALJ was required to do more than generally cite portions of the medical record but to weigh the evidence and explicitly connect it to his conclusion. See D. 17 at 5 ("The bridge is how the ALJ arrived at the RFC restrictions from the testimony and treatment notes … stating the evidence was not weighing the evidence."). Erica's objection, however, fails to acknowledge that the restrictions were largely based on the state consultant's opinion which were consistent with the treatment notes. *See* 20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency[.]" ). In his decision, the ALJ also weighed Plaintiff's allegations and symptoms under SSR 16-3p and found they were inconsistent with the record but created a logical bridge as to why his findings were supported by the record and treatment notes. *See* R. 23.

### C. ALJ Erred in Evaluating Plaintiff's Subjective Evaluation:

Erica's final challenge is that the ALJ failed to justify the weight he gave her testimony. Erica testified that her medication caused her to suffer side effects such as frequent urination and drowsiness. When evaluating a claimant's subjective allegations of their symptoms, the ALJ's inquiry is not on "whether he or she is a truthful person" nor does it involve an assessment of the claimant's "overall character or truthfulness in the manner typically used during an adversarial court litigation." SSR 16-3p. Instead, the ALJ is tasked with determining "whether the evidence establishes a medically determinable impairment that could reasonably be expected to product the individual's symptoms and …. whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]" *Id*. In doing so, the ALJ is required to evaluate the extent to which the claimant's testimony is "consistent with the medical signs and laboratory findings of the record." *Id*.

Here, the ALJ did not credit Erica's testimony regarding the side effects of her medication finding it was inconsistent with the record. As explained by the ALJ, and reiterated in the R&R:

> The claimant testified that she had not left her house since a panic attack at a Walmart in January 2024, but provided no evidence of any panic attack or that she was even getting treatment during this time. In fact, even within her treatment notes she was noted as taking only limited amounts of medication at times or not taking any medication or keeping appointments at other times (Exhibits B2F/8-9; B3F/4-5 13-14; B14F/2). Finally, the claimant reported her medications caused frequent bathroom breaks and as making her tired, but treatment notes gave no indications of this to her provider, beyond noting insomnia or abnormal sleeping patterns and feeling tired in her depression screening, but with her even reporting improvement with that by April 2023 (Exhibits B2F/8-9, 17-18, 21; B3F/2, 5, 8, 11).

R. 23. Judge Hanna explained that the ALJ considered Erica's testimony through the lens of the medical evidence in the record and then justified his reasoning for giving less weight to her testimony that was inconsistent with that evidence. (D. 16, pp. 17–18).

Erica's objection to Judge Hanna's decision on this issue is admittedly hard to follow, and does not accurately reflect the ALJ's decision. She seemingly maintains that the ALJ failed to credit her allegations of frequent urination and drowsiness, arguing that the latter was supported by the record. Further, she argues that the ALJ could not find an inconsistency based on an absent medical report containing such symptoms. Where the record is silent on the matter, Erica claims that the ALJ is unable to find her testimony either consistent or inconsistent with the record. But that argument does not reflect the reality of the ALJ's decision. The ALJ did not state that the medical records gave *no* indication of medications side effects. Rather, the ALJ noted that the medical records showed that Erica was only taking limited amounts of medication at times and not taking it all at other times. R. 23.

The ALJ also noted that Erica's statements regarding the medications side effects were inconsistent with her medical provider's notes, as it was not recorded that Erica reported that medication caused frequent bathroom breaks. *Id.* In her objection to the R&R, Erica claims this

10

silence cannot inform the consistency analysis, citing *Terry v. Astrue*, 580 F.3d 471 (7th Cir. 2009). Though true, in *Terry* the Seventh Circuit found that the ALJ's adverse credibility determination was not supported by the record, that case is distinguishable. As Erica notes, the Seventh Circuit was "skeptical that a claimant's failure to identify sides effects undermines her credibility – after all, not everyone experiences side effects from a given medication, and some patients may not complain because the benefits of a particular drug outweigh its side effects." *Id*. at 477. But this "skepticism" alone was not the sole reason for remand, as the Seventh Circuit continued on to find that the claimant's allegations were supported by the record. *Id*. As discussed, there are no medical records consistent with Erica's allegations and the Court will not remand based on the ALJ's reference to Erica's failure to report these symptoms. *See Chan v. Colvin*, No. 13 C 8732, 2015 WL 3524607 (N.D. Ill. June 3, 2015) ("The Seventh Circuit merely expressed skepticism [in *Terry*] about the relationship between a claimant's credibility and her failure to report side effects to her doctors….*Terry* did not create a bright-line rule that requires remand every time an ALJ discredits a claimant for the above reasons).

Ultimately, ALJ's "subject to only the most minimal of articulation requirements." *Warnell v.*, 97 F.4th at 1053. Under that standard, the ALJ here has said enough to support his decision and permit meaningful appellate review. *Gedatus*, 994 F.3d at 900 (explaining that a "partial summary of select evidence" is appropriate under the minimal articulation requirement).

We also agree with Judge Hanna that to the extent Erica is asking this Court to review and reweigh the evidence on any of these issues *de novo*, we lack that authority. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) ("In our substantial evidence determination, we review the entire administrative record, but do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner."). While other evidence

in the record may inform our review, under the generous standard of review afforded to ALJ decisions we agree with Judge Hanna's R&R to affirm.

### IV.   CONCLUSION

For the reasons set forth above, Plaintiff Erica Y.'s [17] Objections to the Report and Recommendation of the Magistrate are OVERRULED. Magistrate Judge Ronald L. Hanna's [16] Report & Recommendation is ADOPTED. The Clerk is DIRECTED to enter judgment and close this case.

Entered on February 27, 2026.

/s/ Michael M. Mihm  
Michael M. Mihm  
United States District Judge